FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUN 0 8 2010

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
------------------------------------------------------x
CHRISTOPHER JACKSON, JOSEPH
HOGAN, and AMANDA JACAS on behalf
of themselves and all those similarly situated,

CIVIL FILE ACTION NO.

-MHS

             Plaintiffs,

    v.

SIMS F-1, INC. d/b/a McDONALD'S,
FLOYD SIMS, and MARTINE SIMS,

             Defendants.
------------------------------------------------------x

# 1 10-CV-1716

### DEMAND FOR JURY TRIAL

### FLSA COLLECTIVE ACTION AND
### RULE 23 CLASS ACTION

Plaintiffs Christopher Jackson, Joseph Hogan, and Amanda Jacas ("Plaintiffs") allege as follows.

## JURISDICTION AND VENUE

1.     This Court has original federal question jurisdiction under 28 U.S.C. §§ 1331 and 1337 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). This Court has supplemental jurisdiction over the Georgia state law claims under 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative fact and are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2.     This Court has personal jurisdiction over Defendants because Defendant is doing business in this state and in this district

3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district, because Defendants conduct business in this District, and

1

8.     Defendant Floyd Sims is the President and C.E.O. of Sims F-1 and also is in a position of ownership of Sims F-1. Floyd Sims exercises sufficient control of its day to day operations to be considered Plaintiffs' employer under the FLSA and under Georgia state law.

9.     Defendant Martine Sims is the C.F.O. and Secretary of Sims F-1 and also is in a position of ownership of Sims F-1. Martine Sims exercises sufficient control of its day to day operations to be considered Plaintiffs' employer under the FLSA and under Georgia state law.

## FLSA COLLECTIVE ACTION ALLEGATIONS

10.     Plaintiffs Jackson, Hogan and Jacas bring the First and Second Claims for Relief, for violations of the FLSA, as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of themselves and all persons who were, are, or will be employed by Defendant on or after the date that is three years before the filing of the complaint in this case, in any non-exempt position (including any position in which employees were paid by the hour). These persons, including Plaintiffs, are referred to herein as the "FLSA Collective Plaintiffs."

11.     At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing to pay them at time-and-a-half rates for work in excess of forty (40) hours per workweek, willfully failing to pay them at the legally required minimum wage for all hours worked, willfully failing and refusing to pay them at all for work, especially hours worked over 40 in a workweek, and willfully failing to keep records required by the FLSA. The claims of Plaintiffs stated herein are similar to those of the other FLSA Collective Plaintiffs.

3

12.     The First Claim for Relief is properly brought and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b).  The FLSA Collective Plaintiffs are readily ascertainable.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant.  Notice can be provided to the FLSA Collective Plaintiffs by means permitted by applicable law.

13.     Attached hereto are signed consents by Mr. Jackson, Mr. Hogan, and Ms. Jacas, to be party plaintiffs (a.k.a. parties plaintiff) for the FLSA claims alleged herein.

## GEORGIA LAWFUL MONEY CLASS ACTION ALLEGATIONS

14.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Joseph Hogan and Amanda Jacas (the "Georgia Lawful Money Plaintiffs") bring their Third Claim for Relief to address and remedy Defendants' violations of GA. CODE ANN. § 34-7-2 (Payment of Wages in Lawful Money or Checks), on behalf of themselves and all persons described below who comprise the class of Georgia employees (hereafter the "Georgia Lawful Money Class") who were, are, or will be employed by Defendants in Georgia, at any time within the two years prior to the filing date through the date of the final disposition of this action (the "Georgia Lawful Money Class Period").

15.     The Class:  The proposed class the Georgia Lawful Money Plaintiffs seek to represent is presently defined as follows: all persons who have been, are, or in the future will be employed in Georgia by Defendants in any of its stores in any in any non-exempt position (including any position in which employees were paid by the hour) and who were so employed during the Georgia Lawful Money Class Period. The proposed class is easily ascertainable. The number and identity of Georgia Lawful Money Class members are determinable from the records

4

of Defendants, as are the shifts assigned and worked, the positions held, and the compensation paid to each Georgia Lawful Money Class member.

16.     Numerosity: The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the court. While the exact number of class members is unknown to the Georgia Lawful Money Plaintiffs at this time, upon information and belief, their class comprises at least several hundred persons.

17.     Common Questions Predominate:     There is a well-defined commonality of interest in the questions of law and fact involving and affecting the Georgia Lawful Money Class in that all of these employees have been harmed by Defendants' failure to pay (bimonthly or otherwise) employees the full net amount of promised and earned wages. Common questions of law and fact exist as to members of the Georgia Lawful Money Class and predominate over any questions that affect only individual members of the class. The common questions of law and fact include, but are not limited, to the following:

        a.     What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of Georgia Lawful Money Class members' wages for all hours worked;

        b.     What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the time/dates Georgia Lawful Money Class members were paid wages for all hours worked;

        c.     What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which

5

Defendants did not pay the Georgia Lawful Money Class members at all;

d.      Whether Defendants had policies, practices and/or procedures in place to not pay promised and earned compensation to the Georgia Lawful Money Class members;

e.      Whether Defendants had policies, practices, and procedures permitting or encouraging managers of Defendants stores to refuse to pay promised and earned compensation to the Georgia Lawful Money Class members;

f.      Whether Defendants has had policies, practices, and procedures permitting or encouraging management of Defendants stores to modify, alter or falsify Georgia Lawful Money Class members' time records to delete time worked by the employees during a respective pay period;

g.      Whether Defendants failed to pay Georgia Lawful Money Class members promised and earned wages for all work performed;

h.      Whether Defendants failed to pay Georgia Lawful Money Class members bimonthly promised and earned wages for all work performed; and

i.      Whether Defendants' failure to pay such compensation is in violation of the GA. CODE ANN. § 34-7-2 (Payment of Wages in Lawful Money or Checks).

18.     Typicality: The claims of the Georgia Lawful Money Plaintiffs are typical of those claims which could be alleged by any member of the Georgia Lawful Money Class, and the relief sought is typical of the relief which would be sought by each member of the Georgia Lawful Money Class in separate actions. All Georgia Lawful Money Class members were

6

subject to the same corporate practices of Defendants, as alleged herein, failing to pay (bimonthly or otherwise) employees the full net amount of promised and earned wages. Defendants' corporate-wide policies and practices affected all Georgia Lawful Money Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Georgia Lawful Money Class member. The Georgia Lawful Money Plaintiffs and other Georgia Lawful Money Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

19.     Adequacy: The Georgia Lawful Money Plaintiffs are able fairly and adequately to protect the interests of all members of the class, and there are no known conflicts of interest between the Georgia Lawful Money Plaintiffs and other Georgia Lawful Money Class members. The Georgia Lawful Money Plaintiffs have retained counsel who have previously represented plaintiffs in wage and hour cases and who are experienced and competent in both class action and employment litigation.

20.     Superiority: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impractical. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Georgia Lawful Money Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Georgia Lawful Money Class members to redress the wrongs done to them. On the other hand, important public

7

interests will be served by addressing the matter as a class action. The cost to the court system and the public of adjudication of individual litigation and claims would be substantial and substantially more than if the claims are treated as class action. The prosecution of separate actions by individual members of the Georgia Lawful Money Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Georgia Lawful Money Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

21.   Public Policy Considerations: Upon information and belief, Defendants and other employers throughout the state violate GA. CODE ANN. § 34-7-2. Their current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Their former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity that allows for vindication of their rights while eliminating or reducing these risks.

## GEORGIA CONTRACT CLASS ACTION ALLEGATIONS

22.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Joseph Hogan, and Amanda Jacas (the "Georgia Contract Plaintiffs") bring their Fourth Claim for Relief to address and remedy the Defendants' violations of Georgia contract law, on behalf of themselves and all persons described below who comprise the class of Georgia employees

(hereafter the "Georgia Contract Class") who were, are, or will be employed by Defendants in Georgia, at any time within the four years prior to the filing date through the date of the final disposition of this action (the "Georgia Contract Class Period").

23.     The Class: The proposed class the Georgia Contract Plaintiffs seek to represent is presently defined as follows: all persons who have been, are, or in the future will be employed in Georgia by Defendants in any of its stores in any non-exempt position (including any position in which employees were paid by the hour) and who were so employed during the Georgia Contract Class Period. The proposed class is easily ascertainable. The number and identity of Georgia Contract Class members are determinable from the records of Defendants, as are the shifts assigned and worked, the positions held, and the compensation paid to each Georgia Contract Class member.

24.     Numerosity: The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the court. While the exact number of class members is unknown to the Georgia Contract Plaintiffs at this time, upon information and belief, their class comprises at least several hundred persons.

25.     Common Questions Predominate:    There is a well-defined commonality of interest in the questions of law and fact involving and affecting the Georgia Contract Class in that all of these employees have been harmed by Defendants' failure to pay employees promised and earned wages. Common questions of law and fact exist as to members of the Georgia Contract Class and predominate over any questions that affect only individual members of the class. The common questions of law and fact include, but are not limited, to the following:

9

a.     What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of the Georgia Contract Class members' wages for all hours worked;

b.     What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Georgia Contract Class members at all;

c.     Whether Defendants had policies, practices and/or procedures in place to not pay promised and earned compensation to the Georgia Contract Class members;

d.     Whether Defendants had policies, practices, and procedures permitting or encouraging managers of Defendants stores to refuse to pay promised and earned compensation to the Georgia Contract Class members;

e.     Whether Defendants has had policies, practices, and procedures permitting or encouraging management of Defendants stores to modify, alter or falsify Georgia Contract Class members' time records to delete time worked by the employees during a respective pay period;

f.     Whether Defendants promised Georgia Contract Class members that they would receive compensation for all hours worked;

g.     Whether Defendants had agreed to pay Georgia Contract Class members compensation for all hours worked;

h.     Whether Defendants failed to pay Georgia Contract Class members wages which were agreed to, promised, and earned for all work performed; and

10

i.    Whether Defendants' failure to pay such compensation is in violation of
      Georgia contract law and the common law of Georgia.

26.    Typicality: The claims of the Georgia Contract Plaintiffs are typical of those
claims which could be alleged by any member of the Georgia Contract Class, and the relief
sought is typical of the relief which would be sought by each member of the Georgia Contract
Class in separate actions. All Georgia Contract Class members were subject to the same
corporate practices of Defendants, as alleged herein, failing to pay employees promised and
earned wages. Defendants' corporate-wide policies and practices affected all Georgia Contract
Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful
acts as to each Georgia Contract Class member. The Georgia Contract Plaintiffs and other
Georgia Contract Class members sustained similar losses, injuries and damages arising from the
same unlawful policies, practices and procedures.

27.    Adequacy: The Georgia Contract Plaintiffs are able fairly and adequately to
protect the interests of all members of the class, and there are no known conflicts of interest
between the Georgia Contract Plaintiffs and other Georgia Contract Class members.    The
Georgia Contract Plaintiffs have retained counsel who have previously represented plaintiffs in
wage and hour cases and who are experienced and competent in both class action and
employment litigation.

28.    Superiority: A class action is superior to other available means for the fair and
efficient adjudication of this controversy. Individual joinder of all class members is impractical.
Class action treatment will permit a large number of similarly situated persons to prosecute their
common claims in a single forum simultaneously, efficiently, and without the unnecessary

11

duplication of effort and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Georgia Contract Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Georgia Contract Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public of adjudication of individual litigation and claims would be substantial and substantially more than if the claims are treated as class action. The prosecution of separate actions by individual members of the Georgia Contract Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Georgia Contract Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

29.     Public Policy Considerations: Upon information and belief, Defendants and other employers throughout the state violate the Georgia contract law. Their current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Their former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity that allows for vindication of their rights while eliminating or reducing these risks.

12

## **FACTS**

30.     Defendants operate three McDonald's restaurants in Atlanta, Georgia. The three restaurants are located at: 5710 Fulton Industrial Blvd Atlanta, Georgia 30336; 4334 Fulton Industrial Blvd Atlanta, Georgia 30336; and 840 Veterans Memorial Hwy Mableton, Georgia 30126.

31.     The FLSA Collective Plaintiffs, Georgia Lawful Money Class members, and Georgia Contract Class members were paid an hourly rate for work performed.

32.     Plaintiffs Hogan and Jacas were paid an hourly rate for work performed.

33.     When he was a non-exempt, hourly employee (between approximately June 2007 and September 2007), Plaintiff Jackson was paid an hourly rate for work performed.

34.     According to Defendants' policies and practices, Defendants utilize an electronic time keeping system to track non-exempt employees' hours worked. As part of this system, the FLSA Collective Plaintiffs, Georgia Lawful Money Class members, and Georgia Contract Class members clock in and out on the McDonalds' stores' cash registers.

35.     Plaintiffs Hogan and Jacas clocked in and out on the McDonald's stores' cash registers.

36.     When he was a non-exempt, hourly employee (between approximately June 2007 and September 2007), Plaintiff Jackson clocked in and out on the McDonald's stores' cash registers.

37.     According to Defendants' policies and practices, Defendants and Defendants' managers are able to alter the time records of the FLSA Collective Plaintiffs, Georgia Lawful

13

Money Class members, and Georgia Contract Class members from the restaurants' back office, as well as, remotely, from an off-site location.

38. Defendants and Defendants' managers were able to alter the time records of Plaintiffs Hogan and Jacas from the restaurants' back office, as well as, remotely, from an off-site location.

39. When Plaintiff Jackson was a non-exempt, hourly employee (between approximately June 2007 and September 2007), Defendants and Defendants' managers were able to alter the time records of Plaintiff Jackson from the restaurants' back office, as well as, remotely, from an off-site location.

40. Defendants utilized labor budgets for Defendants' restaurants.

41. Defendants and Defendants' managers required and, upon information and belief, still require employees in non-exempt positions to perform tasks off-the-clock when the employees were not clocked in to Defendants' timekeeping system and, as a result, not compensating the employees for work performed.

42. Defendants and Defendants' managers modified and, upon information and belief, still modify the time records of employees in non-exempt positions by inserting an off-the-clock "break" despite the fact that the employees had worked the entire time.

43. Defendants and Defendants' managers shaved or deleted and, upon information and belief, still shave or delete hours worked from the time records of employees in non-exempt positions.

14

44.     Defendants and Defendants' managers subtracted and, upon information and belief, still subtract money from the paychecks of employees in non-exempt positions to pay for costs.

45.     Defendants failed to pay employees in non-exempt positions for all hours worked.

46.     Upon information and belief, Defendants continue to fail to pay employees in non-exempt positions for all hours worked.

47.     Defendants failed to pay employees in non-exempt positions at time-and-a-half rates for hours worked in excess of forty (40) hours per week.

48.     Upon information and belief, Defendants continue to fail to pay employees in non-exempt positions at time-and-a-half rates for hours worked in excess of forty (40) hours per week.

49.     Defendants failed to pay promised and earned compensation for the hours worked by employees in non-exempt positions.

50.     Upon information and belief, Defendants continue to fail to pay promised and earned compensation for the hours worked by employees in non-exempt positions.

51.     Defendants failed to maintain accurate records of the time worked by employees in non-exempt positions.

52.     Upon information and belief, Defendants continue to fail to maintain accurate records of the time worked by employees in non-exempt positions.

53.     Plaintiffs Hogan and Jacas suffered from the illegal activity described in the paragraphs above during their employment. Accordingly, Plaintiffs Hogan and Jacas have sustained substantial losses from Defendants' failure to pay them earned compensation.

54.     When he was a non-exempt, hourly employee (between approximately June 2007 and September 2007), Plaintiff Jackson suffered from the illegal activity described in the paragraphs above.    Accordingly, Plaintiff Jackson has sustained substantial losses from Defendants' failure to pay them earned compensation.

55.     Upon information and belief, other similarly situated, non-exempt employees who worked for Defendants' at their McDonalds' restaurants and who are FLSA Collective Plaintiffs, Georgia Lawful Money Class members, and/or Georgia Contract Class members were subjected to the same policies and practices and have sustained similar losses of compensation for numerous hours worked on behalf of Defendants.

56.     Upon information and belief, Defendants have deliberately engaged in the above unlawful practices, in order to enhance corporate profits and reduce their labor and other costs.

57.     Upon information and belief, Defendants have deliberately trained, supervised, instructed, and/or authorized store managers to engage in the above unlawful practices and have ratified their actions thereafter, in order to enhance corporate profits and reduce their labor and other costs.

## FIRST CLAIM FOR RELIEF
**(FLSA Minimum Wage and Record Keeping Violations, 29 U.S.C. § 201, *et seq.*)**
**(Brought by the Plaintiffs on behalf of themselves**
**and other FLSA Collective Plaintiffs)**

58.     Plaintiffs, on behalf of themselves and other FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

59.     At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within

16

the meaning of FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed, "employee[s]," including Plaintiffs and each of the FLSA Collective Plaintiffs.

60. At all relevant times, Defendants have had, and continue to have common practices, policies, programs, procedures, protocols and plans of willfully failing to keep records required by the FLSA, willfully failing to pay the FLSA Collective Plaintiffs at all for work performed, and willfully failing to pay the FLSA Collective Plaintiffs minimum wage for all hours worked.

61. Throughout the statute of limitations period covered by these claims, Defendants willfully, regularly and repeatedly failed to pay Plaintiffs and the other FLSA Collective Plaintiffs at all for hours worked.

62. Throughout the statute of limitations period covered by these claims, Defendants willfully, regularly and repeatedly failed to pay Plaintiffs and the other FLSA Collective Plaintiffs the federal minimum wage for each hour worked.

63. Throughout the statute of limitations period covered by these claims, Defendants willfully, regularly and repeatedly failed to make, keep, and preserve records required by the FLSA with respect to Plaintiffs and the other FLSA Collective Plaintiffs, including records sufficient to determine the wages, hours, and other conditions and practices of employment pertaining to Plaintiffs and the other FLSA Collective Plaintiffs.

64. Plaintiffs and the other FLSA Collective Plaintiffs seek damages in the amount of their respective unpaid minimum wage compensation, liquidated (double) damages as provided by the FLSA for minimum wage violations, attorneys' fees and costs of action to be paid by Defendants, injunctive relief requiring Defendants to cease and desist from their violations of the

17

FLSA described herein and to comply with the FLSA, and such other legal and equitable relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (FLSA Overtime Violations, 29 U.S.C. § 201, *et seq.*))
### (Brought by the Plaintiffs on behalf of themselves and other FLSA Collective Plaintiffs)

65.     Plaintiffs, on behalf of themselves and other FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

66.     Throughout the statute of limitations period covered by these claims, Plaintiffs and the other FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per workweek.

67.     At all relevant times, Defendants have had, and continue to have common practices, policies, programs, procedures, protocols and plans of willfully failing to pay the FLSA Collective Plaintiffs at all for hours worked in excess of forty (40) hours per workweek and willfully failing to pay the FLSA Collective Plaintiffs at time-and-a-half rates for hours worked in excess of forty (40) hours per workweek.

68.     Throughout the statute of limitations period covered by these claims Defendants willfully, regularly and repeatedly failed to pay Plaintiffs and the other FLSA Collective Plaintiffs at all for hours worked in excess of forty (40) hours per workweek.

69.     Throughout the statute of limitations period covered by these claims Defendants willfully, regularly and repeatedly failed to pay Plaintiffs and the other FLSA Collective Plaintiffs at the required overtime rates, time-and-a-half regular hourly rates, for hours worked in excess of forty (40) hours per workweek.

18

70.     Plaintiffs and the other FLSA Collective Plaintiffs seek damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime wage violations, attorneys' fees and costs of action to be paid by Defendants, injunctive relief requiring Defendants to cease and desist from their violations of the FLSA described herein and to comply with the FLSA, and such other legal and equitable relief as the Court deems just and proper.

### THIRD CLAIM FOR RELIEF
**(Violation of GA. CODE ANN. § 34-7-2 (Payment of Wages in Lawful Money or Checks))**
**(Brought by Georgia Lawful Money Plaintiffs on Behalf of Themselves and the Georgia Lawful Money Class)**

71.     The Georgia Lawful Money Plaintiffs, on behalf of themselves and all members of the Georgia Lawful Money Class, incorporate by reference all preceding paragraphs as if they were set forth again herein.

72.     It is unlawful under Georgia law for an employer to require or permit an employee to work without paying employees the full net amount of promised and earned wages on, at least, a bimonthly basis.

73.     Defendants, through their policies and practices described above, failed to pay (bimonthly or otherwise) the Georgia Lawful Money Plaintiffs and other members of the Georgia Lawful Money Class the full net amount of promised and earned wages.

74.     The foregoing conduct, as alleged, constitutes continuing willful violations of GA. CODE ANN. § 34-7-2.

75.     As set forth above, the Georgia Lawful Money Plaintiffs and other members of the Georgia Lawful Money Class have sustained losses in compensation as a proximate result of Defendants' violations.   Accordingly, the Georgia Lawful Money Plaintiffs, on behalf of

themselves and the Georgia Lawful Money Class members, seek damages in the amount of their unpaid earned compensation and all other available damages.

76. The Georgia Lawful Money Plaintiffs, on behalf of themselves and the Georgia Lawful Money Class members, seek recovery of their costs and attorneys' fees.

**FOURTH CLAIM FOR RELIEF**
**(Violation of Georgia Contract Law)**
**(Brought by Georgia Contract Plaintiffs on Behalf of Themselves**
**and the Georgia Contract Class)**

77. The Georgia Contract Plaintiffs, on behalf of themselves and all members of the Georgia Contract Class, incorporate by reference all preceding paragraphs as if they were set forth again herein.

78. It is unlawful under Georgia contract law for an employer to fail to pay employees, agreed upon, promised and earned wages for all hours worked.

79. Upon information and belief, Defendants promised and agreed to pay the Georgia Contract Plaintiffs and Georgia Contract Class members wages for all hours worked.

80. Defendants, through their policies and practices described above, failed to compensate the Georgia Contract Plaintiffs and other members of the Georgia Contract Class agreed upon, promised and earned wages for all hours worked.

81. As set forth above, the Georgia Contract Plaintiffs and other members of the Georgia Contract Class have sustained losses in compensation as a proximate result of Defendants' violations. Accordingly, the Georgia Contract Plaintiffs, on behalf of themselves and the Georgia Contract Class members, seek damages in the amount of their unpaid earned compensation and all other available damages.

20

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

A.      Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs (asserting FLSA claims and state claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.      Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

C.      Certification of the Georgia state law claims as class actions pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.      A declaratory judgment that the practices complained of herein are unlawful under FLSA and the Georgia law;

E.      An injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

F.      An award of damages, according to proof, including liquidated damages where available, to be paid by Defendants;

G.      Penalties available under applicable law;

H.      Costs of action incurred herein, including expert fees;

I.      Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, and other applicable state law.

   J.  Pre-Judgment and Post-Judgment interest, as provided by law; and

   K.  Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

   Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

Dated: Atlanta, Georgia       Respectfully submitted,
   June 3 , 2010

              HOWARD R. EVANS & ASSOCIATES, P.C.

              By: _____

              Howard R. Evans
              Ga. Bar No. 292865
              1851 Peeler Road, Ste B
              Atlanta, Georgia 30338
              Tel:  (770) 377-9521

              Michael D. Palmer*
              JOSEPH, HERZFELD, HESTER &
              KIRSCHENBAUM LLP
              757 Third Avenue, 25th Floor
              New York, NY 10017
              Tel: (212) 688-5640
              Fax: (212) 688-2548
              *Pro Hac Vice* Application Forthcoming

              *Attorneys for Plaintiffs, proposed collective action members and proposed classes*

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by the SIMS F-1 CORP. d/b/a McDONALD'S and related entities and/or individuals. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Professional Services Agreement signed by the named plaintiffs in this case.

Christopher Diarra Jackson
Full Legal Name (Print)

Signature

01/14/10
Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by the SIMS CORP. d/b/a McDONALD'S and related entities and/or individuals. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Professional Services Agreement signed by the named plaintiffs in this case.

Joseph Eddie Hogan Jr.
Full Legal Name (Print)

Joseph E. Hogan
Signature

JAN. 27, 2010
Date

01/22/2010  17:36    7709208116                    OFFICEMAX 947                              PAGE  03/03

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by the SIMS CORP. d/b/a
McDONALD'S and related entities and/or individuals. I consent to be a plaintiff in an
action to collect unpaid wages. I agree that I am bound by the terms of the Professional
Services Agreement signed by the named plaintiffs in this case.

AmANDA AMBROSA JACAS
Full Legal Name (Print)

Signature

01 - 20 - 10
Date